# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| ELMOTEC STATOMAT, INC., as successor in interest to Statomat Special Machines, Inc., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO.: 1:08-CV-76-TLS |
| LOWRY HAYWOOD & ASSOCIATES, INC., | ) ) ) ) | |
| Defendant. | ) | |

## OPINION & ORDER

This matter is before the Court on the parties' cross motions for summary judgment. The Plaintiff, Elmotec Statomat, Inc., filed a Motion for Partial Summary Judgment on January 14, 2011 [ECF No. 61]. The Defendant, Lowry Haywood & Associates, Inc., filed a Motion for Summary Judgment on January 14, 2011 [ECF No. 63]. Each party has filed a Brief in Support of their Motion for Summary Judgment [ECF Nos. 62 & 64] as well as a Response to the opposing party's Motion [ECF Nos. 68 & 72] and a Reply to the opposing party's Response [ECF Nos. 74 & 76]. The Defendant additionally filed a Motion to Strike Certain Exhibits to Plaintiff's Motion for Partial Summary Judgment [ECF No. 70] pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1(e). The Plaintiff objected to this Motion in its Response to Defendant's Motion to Strike [ECF No. 73]. For the reasons stated below the Court will deny judgment as a matter of law in favor of either party.

**BACKGROUND**

The Plaintiff initiated this cause of action on March 3, 2008, and the Defendant removed to this Court based on diversity of the parties on March 31, 2008. The Plaintiff filed the current Amended Complaint [ECF No. 41] on October 20, 2009. In the Amended Complaint the Plaintiff alleges two Counts. Count I alleges negligence and Count II alleges a "price setting scheme" devised by the Defendant and Travelers Insurance Company (Travelers) which led to the Plaintiff paying an "excessive premium" for insurance. (Am. Compl. ¶ 27, 30, ECF No. 41.) The Plaintiff indicated in its Response to the Defendant's Motion for Summary Judgment that it intended to allege in Count II a breach of the Defendant's fiduciary duty as the Plaintiff's agent and not a claim of unfair trade violations. (Pl.'s Resp. Def.'s Mot. Summ. J. 13, ECF No. 68.) Both the Plaintiff and the Defendant move for summary judgment on both Counts. The Plaintiff's Motion for Partial Summary Judgment argued that material questions of fact existed only as to the appropriate amount of damages.

**STATEMENT OF FACTS**

The Plaintiff is an Indiana corporation that primarily sells and distributes equipment used in the production of electric motors. The Defendant is an insurance agency incorporated in North Carolina, with its principal place of business in Charlotte, North Carolina. The Plaintiff first purchased commercial liability insurance from the Defendant in the mid-1990s[1] and continued to

---

[1] A supervising employee of the Defendant responsible for the Plaintiff's account stated that he first visited the Plaintiff's location in or about 1995. The Plaintiff relies in its brief on a statement in a deposition of another employee of the Defendant that the relationship between the parties dates back to the mid-1990s. (Pl.'s Mem. Supp. Mot. Partial Summ. J. 2, ECF No. 62 (citing Yount Dep. 31, ECF No. 61-7).) The Plaintiff submits an affidavit indicating that the relationship began in or about 1994. The

purchase its commercial liability insurance from the Defendant through the time period relevant to this suit. When the Plaintiff first purchased insurance from the Defendant, the Plaintiff had an office located in Charlotte, North Carolina. In 2003 the Plaintiff began to relocate its Charlotte operations to Fort Wayne, Indiana. At that time, the Defendant suggested in a letter to the Plaintiff that the Plaintiff might want to seek a new insurance agency to provide its commercial liability insurance located closer to its new Indiana location. The Plaintiff decided to continue purchasing insurance through the Defendant, and the Defendant decided to continue selling insurance to the Plaintiff, in spite of the distance between their locations. From the time that the Plaintiff moved its operations to Indiana the Defendant made no visits to the Plaintiff's offices or operations and oversaw no inspections of the Plaintiff's operations.

In 2003 or 2004, the Plaintiff began working with Leo Machine & Tool, Inc. (Leo Machine) to perform machining and manufacturing work for the Plaintiff. Leo Machine was located in a building on U.S. Highway 27 South in Fort Wayne (U.S. 27 building). Also in 2003 or 2004, the Plaintiff began storing furniture in the U.S. 27 building which, in return, became available for use by Leo Machine and by the Plaintiff's Director of Operations for North America, Keith Witwer, as a place to work when he was occasionally at the U.S. 27 building. There was no written agreement between Leo Machine and the Plaintiff and no money was paid by either party for use or storage of the furniture. In 2004, the Plaintiff completed its relocation from Charlotte to Fort Wayne. Around that time, the Plaintiff began storing machining

---

Defendant has objected to the Plaintiff's affidavit on this point as outside the personal knowledge of the affiant. (Def.'s Mem. Supp. Mot. Strike 2, ECF No. 71.) Because the Court finds no material distinction between the dates presented and therefore need not rely on the Plaintiff's affidavit, the Court finds no need to determine whether the Plaintiff's statement regarding the starting date of the relationship was without personal knowledge.

equipment and prototypes at the U.S. 27 building for use in joint projects with Leo Machine. The Plaintiff also stored tax records in the U.S. 27 building.

The Defendant appears to have first become aware of the Plaintiff's relationship with Leo Machine as a result of an audit taken by Travelers in 2004 or 2005. The audit was based on information provided to Travelers by the Plaintiff. At some point after the self-reported audit, Travelers raised the Plaintiff's premium to provide workers' compensation coverage for employees working at Leo Machine on the Plaintiff's projects. In February 2006, the Defendant's agent responsible for the Plaintiff's account, Frances Yount, learned of this increase. Yount told the Plaintiff that the Plaintiff needed to provide a certificate of insurance showing that Leo Machine had its own workers' compensation coverage for the time period December 2004 to December 2005. The Plaintiff ultimately produced this document and had its premium for that time period lowered. In March 2006, Yount sent a letter to Travelers indicating that she believed Travelers had also misclassified employees of the Plaintiff as "Machinery Dealers" rather than "Salespersons" based on the Plaintiff's misunderstanding of these terms when it filled out its self-reported audit. Yount suggested in this letter that a physical audit may help resolve the issue. Travelers declined to undertake a physical audit and instead, in reliance on a letter from the Plaintiff, suggested by Yount, re-classified the Plaintiff's employees to Salespersons and lowered the premium on that basis.

In August 2007, a fire destroyed the U.S. 27 building. The fire destroyed the Plaintiff's office furniture, tax records, and materials related to ongoing and completed design projects kept on those premises. The Plaintiff filed a claim under its commercial insurance policy with Travelers Insurance Company purchased through the Defendant. Travelers denied that claim

under a policy exclusion relating to property permanently off-premises.[2]

The parties essentially agree to the facts presented above. The parties, however, present several factual disputes pertaining to the general nature of and specific events relating to the relationship between the two companies. The Plaintiff asserts that it "relied heavily on [the Defendant's] discretion in obtaining all necessary commercial insurance." (Pl.'s Mem. Supp. Mot. Summ. J. 3, ECF No. 62.) In support of its contention that it relied on the Defendant's expertise and discretion in purchasing insurance the Plaintiff points to evidence of several events where Yount allegedly took actions relating to the Plaintiff's insurance policy without explicit authorization from the Plaintiff to do so. The Defendant disputes the nature and significance of these events.

The Plaintiff submits evidence indicating that, in 2002, Yount, without express direction from the Plaintiff, sought to change the Plaintiff's workers' compensation insurance coverage from another insurance provider to Travelers. The Defendant responds that Yount's statements indicating that she took such action are taken out of context and that the Defendant did not have authority to change, drop, or add coverage without direction from the Plaintiff. The context provided by the Defendant is that Yount also indicated in her deposition that this change would not have been made without first receiving some instructions from the Plaintiff concerning what insurance coverages it sought. Also in 2002, Yount negotiated with a representative from Travelers, without direction from the Plaintiff, to raise the Plaintiff's premium for the upcoming year from an initial offer made by that representative. The Defendant responds by providing

---

[2] As Travelers is not a party to this action, an interpretation of the insurance policy itself is not directly before the Court. The Court accepts for purposes of this Motion that the insurance policy at issue did not cover the Plaintiff's property damaged by the fire at the U.S. 27 building.

additional evidence that Yount took this action to level premiums paid by the Plaintiff over time, that the difference in cost can be explained by the withholding of credits commonly used in the insurance industry to permit agents to level prices over time, and that such credits are not given to the insured to determine how or when they should be used.[3]

Finally, the Plaintiff points to oral and written assertions made by the Defendant concerning the expertise, specialization, and personalization of its services to its clients in general and the Plaintiff in particular. The Defendant does not appear to deny that it made these statements, but rather argues that, irrespective of any such statements, it did not provide the Plaintiff with specialized or personalized service sufficient to make it an advisor to the Plaintiff concerning its insurance needs.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure state that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The motion should be granted so long as no rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477

---

[3]The Plaintiff asserts and the Defendant denies several other instances of alleged action by the Defendant taken without direction from the Plaintiff regarding its insurance coverages. The Court finds that these events, when viewed in the light most favorable to the opposing party, are insufficient to support summary judgment in favor of either the Plaintiff or the Defendant. The Court reaches its conclusions here without otherwise relying on or interpreting those events.

U.S. at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). According to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

With cross motions, the court must construe all facts in a light most favorable to the party against whom the motion under consideration is made. *See Allen v. City of Chi.*, 351 F.3d 306, 311 (7th Cir. 2003). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008).

## ANALYSIS

**A.     Motion to Strike**

The Defendant moved to strike several paragraphs from Keith Witwer's affidavit, Exhibit A attached to that affidavit, and the Plaintiff's Designated Exhibits 3, 4, 5, 6, 7, 8, 9, 10, 14, and

30 arguing that this evidence would be inadmissible at trial on the basis that it was made without personal knowledge, is not authenticated, or constitutes hearsay not within an exception.

Under Federal Rule of Civil Procedure 56(c)(4), any affidavit or declaration "used to support or oppose a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." On a motion for summary judgment, a court must not consider parts of an affidavit that fail to comply with the rule. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987). Affidavit testimony must concern matters within the affiant's personal knowledge. *Payne*, 337 F.3d at 772; *see also* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Personal knowledge is not a rigid requirement; it also "includes opinions and inferences grounded in observations or other first-hand experience." *United States v. Joy*, 192 F.3d 761, 767 (7th Cir. 1999) (citing *Visser v. Packer Eng'g Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991)). The following statements do not comply with the rule and should be disregarded: "(1) conclusory allegations lacking supporting evidence; (2) legal argument; (3) self-serving statements without factual support in the record; (4) inferences or opinions not grounded in observation or other first-hand experience; and (5) mere speculation or conjecture." *Smith v. Hydro Aluminum N. Am., Inc.*, No. 3:08-CV-153, 2010 WL 1382113, at *1 (N.D. Ind. Mar. 30, 2010). Although "self-serving statements in affidavits without factual support in the record carry no weight," *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (emphasis omitted), "a self-serving affidavit supported by facts in the record [can] defeat summary

judgment," and the record "may include the self-serving affidavit itself, provided that the affidavit meets the usual requirements for evidence on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial," *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (quotation marks and citations omitted).

As the Court addresses the legal issues presented by the parties' Motions for Summary Judgment, the Court will analyze the facts under the governing procedural and substantive law, sift through the evidence, consider each piece under the applicable federal rules, consider the admissibility of statements, and determine whether there are any irrelevant, inadmissible, conclusory, or speculative assertions that should be disregarded. The Court will deny as moot the Defendant's Motion to Strike because the Court, for reasons explained below, will reach its conclusions without relying on any inadmissible evidence.

**B.     Duty of Care**

Indiana law typically holds insurance agents to a negligence standard of reasonable care, diligence, and good faith. *Meridian Title Corp. v. Gainer Grp., LLC*, 946 N.E.2d 634, 637 (Ind. Ct. App. 2011). "[A]n intimate, long-term relationship with the agent, or some other special circumstance," may, however, impose on the agent a duty to advise the insured. *Id*. (citing *Am. Family Mut. Ins. Co. v. Dye*, 634 N.E.2d 844, 847 (Ind. Ct. App. 1994)). To determine whether the parties formed a relationship requiring the insurance agent to advise the insured concerning its insurance needs, the Court looks to several factors including:

(1) the agent's exercise of broad discretion to service the insured's needs; (2) the

9

>agent's counseling of the insured concerning specialized insurance coverage; (3) the agent's holding him or herself out as a highly skilled insurance expert, coupled with the insured's reliance upon the expertise; and (4) the agent's receipt of compensation, above the customary premium paid, for the expert advice provided.

*Meridian Title Corp.*, 634 N.E.2d at 847. While the existence of this relationship is a question of law for the Court, factual disputes regarding the relationship between parties may prevent summary judgment. *Billboards 'N' Motion, Inc. v. Saunders-Saunders & Assocs.*, 879 N.E.2d 1135, 1143 (Ind. Ct. App. 2008) (reversing a trial court grant of summary judgment in favor of insurer on special relationship analysis and stating "whether the parties' relationship gives rise to such a duty may involve factual questions"). The insured bears the burden of demonstrating the existence of this relationship. *Id*.

The Plaintiff argues that a special relationship formed over the course of the parties' business intersections, which imposed on the Defendant a duty to advise the Plaintiff. The Plaintiff has put forward evidence sufficient to prevent, but not sufficient to win, judgment as a matter of law on the issue of the existence of a duty to advise based on a long-standing relationship of trust and a history of reliance on the Defendant. The Defendant argues that none of the four factors looked to by courts analyzing such relationships exists in this case.

The length, around 12 years, and exclusivity, the Plaintiff purchased commercial liability insurance through no other agent during that time period, both weigh towards the finding of such a relationship. With regard to the first of the enumerated factors, broad discretion to service the insured's needs, the Defendant argues that it had no discretion, pointing to a deposition wherein the Plaintiff stated that the Defendant had no authority to purchase or change coverage without direction from the Plaintiff. The Plaintiff, however, placed into evidence an email from the

Defendant to a representative at Travelers stating the Plaintiff's workers' compensation coverage "is now with Zenith, but I would prefer to keep everything together." (Yount Dep. Ex. 4, ECF No. 61-8.) Neither the Plaintiff nor the Defendant has put forward additional evidence resolving this factual dispute. Similarly, the Plaintiff presents emails wherein the Defendant's agent, without direction from the Plaintiff, requests that a Traveler's representative increase the Plaintiff's premium. The Defendant provides an expert witness's assertion that such changes in premium levels without the insured's knowledge constitutes a common practice in the insurance industry. The Defendant's expert's conclusions are insufficient to resolve the dispute over whether the Defendant's ability to raise premiums above the price offered by the insurer constituted broad discretion.

With regard to the second factor, counseling of the insured by the agent regarding specialized coverage, little evidence was presented by either side on the degree to which the types of coverage were or were not highly-specialized. The Plaintiff asserts they were, the Defendant asserts that they were not. The negotiated and commercial nature of some of the products at issue, as opposed to the off-the-shelf nature of most consumer insurance, weighs slightly in the Plaintiff's favor. The Plaintiff also submits evidence indicating that the Defendant counseled the Plaintiff with regard to its coverage. Specifically, the Plaintiff presents evidence indicating that it sought and received definitions of coverage, advice on how to classify employees for insurance purposes, and advice on appropriate limits and coverages for some projects.

With regard to the third factor, whether the agent held himself out as expert and whether the insured relied on that expertise, the Plaintiff asserts that the Defendant made such representations and that the Plaintiff relied extensively on that expertise. The evidence tends to

indicate reliance by the Plaintiff on the Defendant's advice. Where the Defendant, for example, advised the Plaintiff how to classify its employees for insurance purposes, the Plaintiff followed that advice. Similarly where the Defendant advised the Plaintiff on how to describe and classify its business in general for insurance purposes the Plaintiff followed that advice. Witwer indicated in his deposition that the Plaintiff relied on the Defendant's expertise. He stated:

> For instance, when I rented the facility for our office in Fort Wayne . . . part of the contract was that we had to carry so much liability insurance. And in that case because of the relationship we had with [the Defendant], we sent them that page and said, "Please make sure we're covered for this."

(Witwer Dep. 35, ECF No. 63-1.) The Plaintiff additionally points to statements of the Defendant's expertise made by the Defendant including that the Defendant "routinely reviews the insurance programs of our clients to be sure each client is protected against possible loss," (Haywood Dep. Ex. 41, ECF No. 61-9,) and the mailing of regular summaries of coverage prepared by the Defendant to the Plaintiff. The Defendant argues that none of these statements is sufficient to create a duty to advise. Instead, it argues that the letter it sent when the Plaintiff moved to Indiana suggesting that the Plaintiff find a local insurance agent indicated to the Plaintiff that its agents were not experts and that the Plaintiff had no reasonable basis for its reliance. The Plaintiff's reliance on the Defendant's expertise over time weigh towards the finding of a duty to advise, but, the Defendant presents material factual disputes as to the basis for this reliance.

The fourth factor, the payment of additional compensation for consulting services, weighs in favor of the Defendant as the Plaintiff provided no evidence of such payments.

The Court finds a recent Indiana Court of Appeals case, *Billboards 'N' Motion, Inc. v.*

*Saunders-Saunders & Associates*, instructive in determining that both parties' Motions for Summary Judgment should be denied on this issue. In *Billboards 'N' Motion*, a billboard company sought insurance for an electronic billboard from its insurance agent. 879 N.E.2d at 1136. Each side then failed to follow up, key details regarding the purchase were not asked for by the agent and were not provided by the billboard company. *Id*. No additional insurance was purchased for the sign. *Id*. The insurance agent blamed the billboard company for not following up with additional information on the billboard to be covered and the billboard company blamed the insurance agent for not seeking more information after he represented that coverage would be obtained. *Id.* The depositions indicated that the billboard company relied on its insurance agent to determine appropriate coverages and had a fifteen-year business relationship, but, that the insurance agent could only purchase insurance with the approval of the company. *Id.* at 1135, 1142–43. The court found the evidence in that case contradictory enough on the issue of the existence of a heightened duty based on a long-standing relationship and other factors to deny summary judgment to both parties. *Id.* at 1143–44.

In this case, the Defendant similarly submits evidence indicating that it could not purchase or change the Plaintiff's insurance coverage without the Plaintiff's permission. And, similarly to *Billboards 'N' Motion,* the Plaintiff asserts that over time it had come to rely on the expertise of the Defendant to determine adequate coverages for its business endeavors. While reliance in *Billboards 'N' Motion* may be somewhat clearer than in this case, the factual issues raised, on both sides, are similar enough to indicate that summary judgment in favor of either party is inappropriate on the issue of a heightened duty to advise the Plaintiff.

Because the Court cannot conclude as a matter of law that the Defendant owed the

Plaintiff a heightened duty of care, the Plaintiff is not entitled to judgment as a matter of law on the negligence claim as a whole. Neither is the Defendant. The Plaintiff's evidence of some knowledge on the part of the Defendant's agent of its use of an additional facility for business purposes is sufficient to defeat the Defendant's motion for summary judgment on whether a duty to advise the Plaintiff was breached. Undisputed evidence shows that the Defendant learned through an increase in the Plaintiff's workers' compensation insurance premium that the Plaintiff had undertaken some operations, albeit as the Defendant argues through a sub-contractor, at an additional location. The Plaintiff has submitted expert witness evidence supporting its argument that the Defendant failed to fulfill a duty to advise the client concerning insurance coverage.

The Defendant argues that it acted reasonably and breached no duty to the Plaintiff. The Defendant argues that the Plaintiff acted unreasonably by failing to inform the Defendant that it had property stored at the U.S. 27 location or providing any other information about that location if the Plaintiff wanted insurance coverage for it, particularly where the Plaintiff had, in the past, alerted the Defendant to any new location for which it needed insurance coverage. Additionally, the Defendant argues that the Plaintiff understood its insurance policy well enough to request coverage for the U.S. 27 building if desired. Whether the Defendant breached a duty to advise by failing to follow up with the Plaintiff on additional potential liabilities at the U.S. 27 building constitutes a factual question foreclosing the possibility of summary judgment for either side on the issue of negligence.

C.  **Statute of Limitations**

The Defendant argues that the Plaintiff's negligence claim should be denied as a matter of

law because the statute of limitations has expired. Indiana law provides a two-year statute of limitations for bringing a negligence action. Ind. Code. § 34-11-2-4 (2011); *Filip v. Block*, 879 N.E.2d 1076, 1082 (Ind. 2008). "In general, the cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Id*. (quotation marks omitted).

If the Plaintiff's cause of action were posed as a negligence claim for failure to procure insurance, the Defendant may have been correct in asserting that the two-year statute of limitations has expired. However, the Plaintiff has put forward, as explained above, a claim for negligent failure to advise based on an alleged long-standing relationship of trust between the Plaintiff and the Defendant. The alleged tortious conduct of a failure to advise the Plaintiff concerning its insurance needs likely took place sometime in 2005 or 2006 when the Defendant became aware of the Plaintiff's use, at least through a contractor, of an additional location in Indiana. The Plaintiff filed this action in March 2008. If the Plaintiff can show that it fairly relied on the Defendant under a duty to advise, then it has grounds to argue that it, through the exercise of ordinary diligence, could not have become aware of its injury before the fire and the denial of its claim for lack of coverage. The same evidence that allowed the Plaintiff to defeat summary judgment similarly creates a question of fact as to when it should have become aware of the harm. Accordingly, a question of fact exists sufficient to prevent judgment as a matter of law on the issue of whether the statute of limitations has expired on the Plaintiff's claim. Similarly, based on the same evidence discussed above, the Plaintiff is not entitled to judgment as a matter of law on this issue, as it has only created a factual question as to whether the Defendant

breached a duty and when the Plaintiff could have learned of the harm.

D.   **Breach of Fiduciary Duty Claim**

"[A]n insurance agent or broker who undertakes to procure insurance for another is an agent of the proposed insured, and owes the proposed insured a duty to exercise reasonable care, skill, and good faith diligence in obtaining the insurance." *Brennan v. Hall*, 904 N.E.2d 383, 386 (Ind. Ct. App. 2009). In support of its breach of fiduciary duty claim the Plaintiff submits evidence of two emails sent between Yount and a representative at Travelers. The representative at Travelers offered a "tentative" price of $48,733 for the Plaintiff's insurance coverages. (Yount Dep. Ex. 5, ECF No. 61-8.) Yount responded requesting a higher premium be charged to the Plaintiff. Yount stated: "Your price is too low. You can have the entire account . . . but we want a total premium of around $55,000–$58,000." (Yount Dep. Ex. 6.)

The Defendant responds by submitting expert witness testimony and an affidavit from the Travelers representative involved indicating that the increased price was proposed to keep premiums level over time and is in keeping with standard industry practice. The Plaintiff's expert asserts that the action taken here is not standard practice. Factual questions on the issue of whether the Defendant breached a duty of good faith to the Plaintiff by colluding with the insurer to raise the Plaintiff's premiums prevent summary judgment in favor of either party on this issue.

# CONCLUSION

For the reasons stated above, the Court DENIES the Plaintiff's Motion for Partial Summary Judgment [ECF No. 61] and the Defendant's Motion for Summary Judgment [ECF

No. 63]. The Court DENIES AS MOOT the Defendant's Rule 56 Motion to Strike [ECF No. 70].

SO ORDERED on September 23, 2011.

                                     s/ Theresa L. Springmann
                                    THERESA L. SPRINGMANN
                                    UNITED STATES DISTRICT COURT